ELIZABETH FOSTER

v.

TEMPY S. KNOWLES et al.

1. A judgment creditor of a decedent, who files exceptions to his administratrix's account in the orphans court, need not, on the ground that he has not exhausted his remedy at law, wait until those exceptions are disposed of there before filing a bill in chancery to have such judgment declared a lien on lands conveyed away by the decedent, if such account as presented shows that all the assets amount to less than the judgment.

2. A debtor died thirteen days after a judgment had been obtained against him on his bond.—*Held*, that it was not laches for the creditor to wait until after his administratrix had filed her account in the orphans court before filing a bill to have such judgment declared a lien on the decedent's lands.

3. A complainant's bill to have his judgment declared a lien on lands conveyed away by the judgment debtor, which does not aver that such conveyance "hindered, delayed and embarrassed her" in collecting the money due on his judgment, may amend his bill by inserting such averments at the final hearing, if he shows that such conveyances were fraudulent as to him.

4. A husband bought and paid for lands with his own money, and took the title thereto in the name of himself and wife. He borrowed money of complainant, giving her therefor a bond and mortgage on the premises, in which his wife joined. He made valuable improvements on, and had the exclusive control and profits of the premises. He induced complainant to surrender and cancel her mortgage by his promise to pay her the amount due thereon, but failed to do so, and she accepted his bond therefor. He subsequently conveyed his estate in the premises to his wife, still retaining the possession himself, and receiving the rents therefrom. Complainant afterwards recovered a

Foster *v.* Knowles.

judgment against him on her bond.—*Held*, that the debtor's conveyance to his wife was fraudulent as to her, and should be set aside.

*Mr. Alfred Flanders,* for complainant.

*Mr. A. H. Gangewer* and *Mr. J. D. Bennett* (of Philadelphia), for defendant Knowles.

BIRD, V. C.

This bill is filed to ask the aid of the court in enforcing a judgment at law against three parcels of land. At one time the title to all of it was in the name of the debtor and his wife. Afterwards, and after the debt on which the judgment was obtained was created, the title to all was transferred to a daughter of the debtor and his wife, and by her again transferred, in one case, to the debtor and his wife, and, in the other, to the wife only. I will give a brief history.

In 1870 Mr. R. purchased a lot of land for $720, and took the title in the name of himself and wife. Soon afterwards he commenced building thereon. In about nine months he borrowed $700 of complainant and her sister on his bond, secured by a mortgage on this lot, both husband and wife joining therein. In December, 1871, he purchased a lot three feet wide adjoining the lot as mortgaged, for the purpose of extending his buildings, and took the title in the name of himself and wife. On these lots he borrowed more money; at one time $600, and at another $1,200. In 1877 he prevailed upon the complainant to surrender her mortgage for cancellation, that he might raise upon these two lots $2,500 from one person, which he could not do, except on a first mortgage. As I read the case, the complainant surrendered her bond and mortgage upon the promise of payment to be made out of the moneys so raised, but in lieu thereof she was tendered a bond of Mr. R., which she accepted. In 1878 Mr. R. purchased another lot, and built thereon. For this he paid $800, and took the title in the name of himself and wife.

On February 19th, 1881, Mr. and Mrs. R. joined in transferring the title to the third, or last lot above mentioned, to their

daughter, Mrs. Crosley. The consideration named is $700. Mrs. Crosley held this title until August 22d, 1881, when she reconveyed it to Mrs. R. The consideration named is $600.

On February 28th, 1881, Mr. and Mrs. R. transferred the title to the first and second lots above mentioned to Mrs. Crosley. The consideration named is $500. Mrs. Crosley held this title until May 15th, 1883, when she reconveyed it to said Mr. and Mrs. R., for the same nominal consideration.

In November, 1883, judgment was entered by the complainant on her bond for $753.40, and in a few days thereafter the defendant therein, Mr. R., died. Mrs. R. became administratrix of his estate. Before the bill was filed, said administratrix filed her account in the orphans court, in which she claimed a balance of $23.67 due to herself upon a final settlement of the estate.

As first stated, the complainant seeks the aid of this court, and asks to have her judgment declared a lien on said lands, and that said administratrix may be decreed to pay the judgment out of any money in her hands, and in default thereof, that said lands may be sold discharged " from said fraudulent deeds."

The bill charges, and it is admitted in the answer, that all the money required to pay the consideration price for the said three tracts of lands, and also for the buildings erected thereon, was the money of Mr. R. It is also charged that Mrs. R. had no separate estate, and this too is admitted. The case satisfies me that Mr. R. became largely indebted in 1877, about the time of the delivery of the bond on which the judgment was obtained, but whether insolvent then or not, does not appear. And it is in evidence that Mrs. R. said that when she heard of this indebtedness to Mrs. Foster, she told her husband " that he had done very wrong, and he said that was true; that he had done wrong, but when he received the money that was to pay her (Mrs. Foster) he had so many demands upon him that he had not money enough to go around."

First, it is said, in resistance to this claim, that the bill was prematurely filed, the complainant not having exhausted her remedy at law. An effort was made to apply this principle to these facts: the administratrix filed her account, under oath, with

the surrogate, in which she claimed a balance of $23.67 due to herself, to which the complainant in this cause filed exceptions. After the said account was filed, the complainant filed her bill in this court, and that too before the exceptions had been disposed of by the orphans court.

The question is, Was the bill filed prematurely? The complainant's judgment is $753.40, and the whole value of the assets of the deceased judgment debtor, in the hands of the administratrix, is only $696.95, so that without reference to the costs of administration there is not enough to pay the judgment. This statement is an answer to the inquiry. But it is said on the one hand, and admitted on the other, that the proceedings under said exceptions have so reduced the credits of the accountant that at least $133 will be in hand, to be applied to the judgment of complainant, and that, in all probability, it will be still further reduced to the extent of $200. The answer to this is that even in that event there will remain due on the judgment over $300. This statement contains the facts, and shows the line of reasoning to support the allegation "that the complainant had not exhausted her remedy at law." What could she do at law? Evidently any further search by that instrumentality were vain. If the administratrix, who is friendly to this estate, and interested in holding these lands, cannot discover any more personal estate, it would be quite inconsistent for the court to say that the judgment creditor must further try to make discovery. And, as to the real estate, the complainant is utterly helpless at law, since Mrs. R. most strenuously urges that the title thereto is in her absolutely. And clear enough it is that the title to the third lot first above named (the one purchased by Mr. R. in 1878) was conveyed to Mrs. R. by Mrs. Crosley, so that at law the title is in her; and it is equally clear that at law she holds the title to the other two, they having been conveyed to Mr. and Mrs. R. (then being husband and wife), and she having survived him. These facts preclude argument.

Secondly. It is said that there has been unreasonable delay. There has been no delay since the judgment was obtained. The complainant was justified in not filing her bill within the thir-

teen days which passed between the entry of her judgment and' the death of the debtor. Nor would she be charged with laches. in holding her lands until the administratrix had filed her account. Should the complainant have proceeded to take judgment before she did? All the facts at all material to the issue are above given, and I can find nothing in them to sustain the charge of laches. Besides, it is to be considered of no small importance that during all this period of time the complainant was. well advanced in years, and that Mr. R., the debtor, had her unbounded confidence.

Thirdly. It is said that the complainant does not show, in her bill, that the conveyances to Mrs. Crosley at all "hindered, delayed or embarrassed her" &c. It is true there is no such allegation in the bill. It is also true that while the answer declares. the fact, it does not claim any benefit therefrom. Therefore, since the cause has proceeded to final hearing, such defect may be supplied by apt amendments to the bill, in case the complainant prevail on the main question, which is:

Fourthly. Were these conveyances fraudulent? The facts. will aid us in determining this point. In 1870 Mr. R. purchased the first lot for $700. He commenced building thereon, and soon after gave to the complainant and her sister a mortgage on said lot to secure $700, which, in reality, is the same money now sought to be collected on the bond given to the complainant in 1877. In 1871 Mr. R. purchased another tract, only three feet wide, adjoining the tract just referred to, for $30, in order to extend his buildings. He proceeded with his building operations, and borrowed money on said premises from a building loan association or otherwise, giving one mortgage to secure $1,200, and another to secure $600, showing, with complainant's and her sister's, mortgages to the amount of $2,500.

The wife, Mrs. R., had nothing to do with any of these transactions, except to join in the execution of the mortgages. She had no estate whatever of her own. She contributed no labor, thought or advice from the beginning to the end. For a long while she was ignorant that the title to these lots was in her name and in that of her husband; and when she learned the fact and

remonstrated with him for his course of business, he said he did it for the more easy settlement of his estate in case of the death of either. This shows that he fully understood the legal rights of the parties as between themselves. It shows that he knew that judgments against him in the lifetime of his wife could not be enforced against these lands so held. See *Schouler on Husband and Wife* § *398*. They each take the entirety. They do not take by moieties. *McDermott* v. *French, 2 McCart. 78.*

The lot which Mr. R. purchased in 1878 (after he gave the bond on which the judgment was entered), the title to which he took in the name of himself and wife, he paid for with his own money ($800). He built thereon, and during his lifetime had the sole possession and control, receiving all the rents and profits. This lot is the one conveyed by him and his wife to Mrs. Crosley in February, 1881, for the pretended consideration of $700, and which was conveyed by Mrs. Crosley to Mrs. R., in August, 1881. No consideration passed in either case. During the time Mrs. Crosley held the title, Mr. R. held the possession and exercised all the dominion of an absolute owner. Why this conveyance of the title to the daughter, Mrs. Crosley? It does not appear that she took any part in the transaction. It does not appear that she knew anything about it until she was required to convey it to Mrs. R. again. When it is considered that Mr. R. was largely indebted at the time, can there be any other conclusion than that he designed to secure this tract (the one purchased in 1878) beyond the reach of his creditors? Had he honestly intended it for the benefit of his wife, in case she survived him, he would have sought no change of title. The title having been in both husband and wife, had she survived she would have taken the whole, free from his obligations, except in case of fraud. But at the time of this transfer to Mrs. Crosley, the debt of complainant existed; and this being so, the conveyance cannot stand, in the light of *Haston* v. *Castner, 4 Stew. Eq. 697*, and of *Clinton Station Manufacturing Co.* v. *Hummell, 10 C. E. Gr. 45; S. C., 12 C. E. Gr. 497.* In this last case, instead of taking the title in the name of himself and wife, the debtor took the title in the name of his wife, and con-

---

Foster v. Knowles.

---

tinued thereafter, from time to time, to increase his liabilities. It is my judgment that both of these cases are most decidedly against the defendant.

I conclude that as to the lot or tract of land, thirdly described in the bill (being the one purchased in 1878, after the debt accrued), the complainant is entitled to relief.

What as to the other tracts, the title to which was in the name of the husband and wife at the time of the giving of the bond on which the judgment was entered? Is there any evidence of fraud in the dealings of Mr. R. in regard thereto? Follow his steps backward. In 1883, he took the title again in the names of himself and wife, after allowing his daughter to hold it over two years without any consideration. During all this time he was in possession and control as fully as though he had absolute title and dominion, receiving and enjoying all the profits. When he took the title back to himself and wife, it stood precisely as it did in 1881, when he had it conveyed to Mrs. Crosley. Why this circumlocution? I can only regard it as one of the strongest badges of fraud. It stands wholly unexplained and unexcused. Taking another step backward, it is seen that all the improvements of every kind were put on these lots by Mr. R., and paid for out of his own funds or out of those which he borrowed from time to time. In making these improvements, his liabilities greatly increased, so that when he procured the consent of the complainant to surrender her mortgage (given for this same debt in 1871) for cancellation, upon a promise of payment, he was unable to pay it, and left her without any redress except his bond, he having given a mortgage to an innocent third party. But it is said, notwithstanding all this, that, he having taken the title to the lands upon which all these improvements were made in the name of himself and wife, the complainant is without redress, unless she can show that the act of taking the title was in itself fraudulent. The argument was that a debtor, having taken title to lands in the name of his wife, or of his wife and himself, at however small a cost, and then having made improvements and additions thereon, at ever so much expense to himself, he paying all charges out of his own funds

Foster v. Knowles.

and exercising the most absolute control, all subsequent creditors, at every stage and of every character, have no standing against the title so held, unless it is shown that fraud was actually intended at the time, that is, shown by acts then and before, because he had a legal right to take the title in the name of his wife, and thus to make a gift to her of so much of his estate, by doing which he could not possibly injure any one, since the record was notice to all; and not being injured by the first transaction, none of the subsequent changes of title could possibly be the subject of complaint by creditors, their rights having been in nowise imperiled by such first conveyance. This proposition and argument leave out of view the most significant truths—truths which the court cannot ignore, that is, that the value of the premises so conveyed to the wife was more than quadrupled by the labor and money of the husband afterwards, and that, too, after the original liability in this case was created. Adding these elements to the proposition of counsel for Mrs. R., I cannot but think that it would be most unreasonable, unjust and illogical for a court of equity to sustain it. With this addition, such a proposition is not at all in harmony with the adjudications, but, as it seems to me, in most violent conflict with them. Every judge considers the consequences arising from his conclusions, if they become the law. Should it be declared that whenever it appears that a debtor has, it may be in the utmost good faith, secured the title to lands in the name of his wife, or of himself and wife, with the view of making it a gift to her absolutely, in the one case, and also in the other in case she survive him, and he, at his own cost, makes valuable and permanent improvements there and exercises every possible *indicia* of ownership, creditors of the husband have no redress against the lands so held, then indeed would all of the old maxims, principles and judgments of the common law be overturned, the statute of frauds made void or of no effect, and fraud be triumphant. Such declaration would be tantamount to saying to all dealers and speculators, "You can save all your capital and protect yourself against the payment of your debts by first securing the title to lands in the name

of your wife, or in the name of your wife and yourself, and then place or secure all your capital in valuable improvements thereon."

I have given this case this consideration because the learned counsel seemed to be as earnest in their convictions that they were right, as I am in my conviction that they were wrong. Besides, I cannot fail to regard the case of *Clinton Station Manufacturing Co.* v. *Hummell, supra,* as directly in point, and to be unquestioningly accepted.

I will advise a decree declaring the said deeds void as to the complainant, and that the judgment of the complainant is a lien on all of the lands described in the bill, and that they be sold to raise money to pay and satisfy the amount which shall remain due on the complainant's judgment after an application thereon of the amount found to remain in the hands of said administratrix, for the purpose of ascertaining which and making payment thereof to complainant, thirty days will be allowed her after the service of a copy of the decree upon her or upon her solicitor ; and in case she does not pay whatever amount may be in her hands at the expiration of said thirty days, I will in that case advise that an execution do issue for the whole amount now ascertained to be due on the judgment of complainant.  The complainant is entitled to costs.  If there be any question, at any time, as to the amount remaining due on the judgment, either party can open the matter to the court on motion.